UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM A. VALLS and <br> CHRISTINE C. VALLS <br><br> Plaintiff, <br><br> v. <br><br> ALLSTATE INSURANCE COMPANY <br><br> Defendant. | : <br> : <br> : <br> : Case No. 3:16-cv-01310-VAB <br> : <br> : <br> : <br> : DECEMBER 7, 2016 <br> : <br> : |

**DEFENDANT ALLSTATE INSURANCE COMPANY'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

I.  **Plaintiffs' claimed loss does not fall within the Policy's Limited Coverage For "Collapse."**

Plaintiffs, in their opposition, largely ignore the unambiguous policy exclusions directly applicable to Plaintiffs' claimed loss. In fact, they barely acknowledge the language of the Allstate policy, opting instead to rely on generalities and public policy arguments to support their points. But this motion involves the interpretation of a written contract, so the Court's interpretation of what the Policy says – both specifically and construed as a whole – is determinative. *See, e.g. Gottesman v. Aetna Ins. Co.*, 177 Conn. 631, 634, 418 A.2d 944 (1979).

The Allstate policy's grant of coverage applies to "sudden and accidental direct physical loss to property." (ECF 24-4, p. 31) That coverage is subject to exceptions and exclusions, including exclusions for loss consisting of or caused by (1) "cracking" of "foundations [or] walls;" (2) "faulty, inadequate or defective. . .materials used in…construction;" or (3) "rust or other corrosion." (ECF 24-4, pp. 32-33). The Policy also excludes loss caused by or consisting of collapse, "except as specifically provided" in the limited additional protection for collapse, which is an exception to the general collapse exclusion. (ECF 24-4, p. 32).

Plaintiffs' entire argument rests on the premise that their foundation walls have "collapsed." (Plaintiffs' Memorandum in Opposition, ECF 25 at p. 5). As stated in Allstate's main brief, the Policy's limited collapse coverage requires an "entire collapse" of a building structure or part of a building structure. It provides that "[f]or coverage to apply, the collapse. . . .must be a **sudden and accidental** direct physical loss" caused by one of six specified perils, including "hidden decay of the building structure" and "defective methods of materials used in construction. . . ." (ECF 24-4, p. 40) (emphasis added). It also provides that "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion." (Id.)

Plaintiffs argue that Allstate's use of "sudden" in the collapse provision is inconsistent with *Beach v. Middlesex Mut. Ass. Co.*, 205 Conn. 246, 252, 532 A.2d 1297 (1987), because, they say, *Beach* "explicitly rejected the notion that a 'collapse' must involve a sudden or catastrophic event." (ECF 25, at 7). This is an inaccurate characterization of the *Beach* holding. *Beach,* like this case, involved a court's interpretation of insurance policy language.[1] The policy in *Beach*, however, was much different than the Allstate policy. In *Beach,* the policy provided: "This policy does not insure against loss ... by ... settling, cracking, shrinkage, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings... *unless ... collapse of a building ... not otherwise excluded ensues, then this policy shall cover only such ensuing loss.*" *Beach*, supra, 205 Conn. at 250 (emphasis added). The *Beach* court, construing this language, held that the policy did not "unambiguously limit its liability to a 'collapse' of a sudden and catastrophic nature." *Id.* at 252.

Allstate's policy does what the *Beach* policy did not -- it unambiguously limits the scope of its collapse coverage to "sudden and accidental" direct physical losses, and provides that

---

[1] As the *Beach* court held: "The defendant's appeal, on this issue, challenges only the definition to be accorded to the term 'collapse' *in its insurance policy*." 205 Conn. at 253 (emphasis added).

2

"[c]ollapse does not include settling, cracking, shrinking, bulging or expansion."[2] (ECF 24-4, p. 40). Unlike the policy at issue in *Beach*, a suddenness requirement is written into the Allstate policy. Under the Allstate policy, a covered collapse must be a "sudden" event.

Plaintiffs next attempt to portray the Policies' collapse coverage as facially ambiguous because certain specified perils that can lead to a collapse – for example, "hidden decay" – can occur "gradually over a period of time." (See ECF 25, at 8-9). Again, this argument is misleading. While "hidden decay" implies a deteriorative process, a *collapse* caused by hidden decay may indeed be a "sudden" event – and only sudden events fall within the scope of the limited coverage for collapse provided in the Allstate policy. There is nothing ambiguous about a "sudden" collapse caused by hidden decay, as Judge Underhill held in *Alexander v. General Ins. Co. of America*, Docket No. 3:16-cv-0059 (D. Conn. July 7, 2016) (ECF 24-2 at pp. 13-14).[3]

As discussed in Allstate's principal brief, under the Connecticut Supreme Court's decision in *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 540, 791 A.2d 489 (2002), the term "sudden" is synonymous with "abrupt," the term the Court construed in *Alexander*. Plaintiffs try to distinguish *Buell*, which construed the phrase "sudden and accidental" in an exception to a pollution exclusion, by arguing that while pollution can occur due to a sudden or gradual release of pollutants, "there is no 'sudden' type of decay." (ECF 25, at 11). Again, Plaintiffs treat the Allstate policy as if it provided coverage for "hidden decay,"

---

[2] Unlike the policy in *Beach*, which excluded settling, cracking, shrinking, or expansion, but expressly provided for coverage of such losses if "collapse" ensued, Allstate's policy removes "settling, cracking, shrinking, bulging or expansion" from the scope of collapse coverage.

[3] Plaintiffs characterize *Alexander* as "irrelevant" because the policy in *Alexander* contains a definition of collapse different than Allstate's (ECF 25 at p. 11). The relevant portion of the *Alexander* policy, however, limited collapse to an *abrupt* falling down or caving in. Allstate's policy requires, *inter alia*, a "sudden" collapse. Under *Buell Indus. Inc. v. Greater New York Mut. Ins. Co.*, 259 Conn. 527, 540, 791 A.2d 489 (2002), "sudden" and "abrupt" are synonymous. Thus Judge Underhill's holding that an "abrupt" (*i.e.*, sudden) collapse could result from a gradual process of decay is highly relevant to this case. Also like the policy in *Alexander*, the Allstate Policies provide that "[c]ollapse does not include settling, cracking, shrinking, bulging or expansion." (ECF 24-4, p. 40). Judge Underhill rejected the plaintiff's claim that "bulging" constituted a collapse because "bulging. . .is expressly excluded from the definition" of collapse. (ECF 24-2, p. 11).

rather than a "sudden and accidental" "entire collapse." As the Court made clear in *Alexander*, it is not unusual for hidden long-term decay to result in a "sudden" collapse -- the beam that finally snaps after being eaten from within for years by termites.

Plaintiffs cannot escape the holding of *Buell*, articulated in broad terms, that "sudden" in the context of the phrase "sudden and accidental" means "temporally abrupt." Plaintiffs do not allege a "sudden," or temporally abrupt event, but rather allege "deterioration." (ECF 21, at ¶ 11). There is nothing "sudden" or abrupt about a process of deterioration that has occurred slowly and incrementally since the first pouring of the concrete, and continues to this day.

Plaintiffs cite one Florida case, *Kelly v. Balboa Ins. Co.*, 897 F. Supp. 2d 1262 (M.D. Fla. 2012) for their argument that the term "sudden" is somehow ambiguous. *Kelly*, which has never been cited in another decision for the proposition upon which Plaintiffs rely, involved the question of whether a "collapse" potentially occurred during the applicable policy period. The court denied the insurer's motion for summary judgment, because it found a factual dispute on that issue. The court also stated, without analysis, that the term "sudden" in the policy's collapse provision was ambiguous as applied to hidden decay and hidden insect or vermin damage. This aspect of the *Kelly* decision, unsupported by any analysis, is clearly wrong and directly contrary to Judge Underhill's decision in *Alexander*. As the *Alexander* court held, hidden decay occurring over time may indeed lead to an abrupt, or sudden collapse, and there is nothing ambiguous about that.[4]

---

[4] Plaintiffs attempt, without success, to distinguish *Ass'n of Unit Owners of Nestani v. State Farm Fire & Cas. Co.*, 670 F. Supp. 2d 1156 (D. Or. 2009), *aff'd sub nom. Ass'n of Unit Owners of Nestani-A Grecian Villa v. State Farm Fire & Cas. Ins. Co.*, 434 F. App'x 579 (9th Cir. 2011), cited in Allstate's main brief at page 14. (ECF 24-1, at 14). *Nestani*, like *Buell*, interpreted the term "sudden" to mean "temporally abrupt" in the context of a collapse provision that provided, much like Allstate's: "We insure only for direct physical loss to covered property involving the **sudden, entire collapse** of a building or any part of a building." *Id.* at 1161-62 (emphasis added). As to the meaning of "sudden" in this context, *Nestani* is persuasive authority.

4

**II.     Because Counts I and II Should be Dismissed, Counts III (Breach of the Implied Covenant of Good Faith and Fair Dealing) and IV (Violation of CUTPA and CUIPA) Should Be Dismissed As Well.**

Plaintiffs do not appear to dispute that if there is no coverage under the Policy, there can be no liability for bad faith or a CUTPA/CUIPA violation. Therefore, only if the Court does not grant Allstate's motion to dismiss Counts I and II of the Complaint is it necessary to consider the allegations of Counts III and IV. Because Plaintiffs have not alleged facts to support a "sudden and accidental" "entire collapse," there is no coverage under the Allstate Policies' limited coverage for collapse, and thus there can be no bad faith liability in this case.

**III.    Even if the court declines to dismiss Counts I and II, Count III should be dismissed on the alternative grounds that Plaintiffs' allegations of citations to "inapplicable policy provisions" do not state a claim for bad faith.**

As noted in Allstate's main brief at page 17, an insured cannot recover for bad faith if the insurer denies a claim that is "fairly debatable," and the insurer has some arguably justifiable reason for denying the claim. *McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169, 177 (D. Conn. 2005). At a minimum, the coverage issues at issue here are "fairly debatable," precluding liability for bad faith.

Very recently, in *Liston-Smith v. CSAA Fire & Cas. Ins. Co.*, No. 3:16-CV-00510 (JCH), 2016 U.S. Dist. LEXIS 147165 (D. Conn. Oct. 25, 2016), Judge Hall dismissed an almost identical claim of bad faith in another concrete deterioration case. The court noted that "the plaintiffs allege that [the insurer] sought out policy provisions that allowed it to deny benefits and interpreted those provisions unreasonably and in bad faith. Nothing in the Complaint provides the court with allegations that plausibly support an inference that CSAA acted in bad faith or with a sinister motive. It does not explain what policy provisions were used unreasonably, how they were applied, or even allege a sinister motive other than a denial of

5

benefits." Id. at *6-7. Where, as here, a plaintiff includes only "naked, conclusory allegations as to the legal status of defendant's acts" but fails to "specif[y] how or in what manner defendant's denial of coverage . . . was outrageous, malicious and done in bad faith," a motion to dismiss is properly granted. *Martin v. Am. Equity Ins. Co.*, 185 F. Supp. 2d 162, 165 (D. Conn. 2002); *see also Bepko v. St. Paul Fire and Marine Ins. Co.*, No. 3:04 CV 01996 PCD, 2005 WL 3619253 at *4 (D. Conn. Nov. 10, 2005) (dismissing breach of covenant of good faith and fair dealing claim because plaintiff's allegations "fail to hint" that the defendant's actions met standard for bad faith).

In their opposition, Plaintiffs rely on a string cite of various cases that they maintain support their position that they have met the pleading requirements for a claim of bad faith. Those cases, however, are inapposite and readily distinguishable from this case. In none of those cases did the court, like this Court in *Kim v. State Farm Fire & Cas. Co.*, No. 3:15-cv-879, 2015 U.S. Dist. LEXIS 147823 (D. Conn. Oct. 30, 2015), analyze the allegations that the insurer cited "inapplicable policy provisions" in the denial letter by comparing the allegations of the complaint against the basis for denial stated in the letter attached to it. Two of the cases Plaintiffs cite, *Kowalshyn v. Peerless Ins. Co.*, 3:16-cv-00148 (JAM) and *Mensher v. Liberty Mutual Fire Ins. Co.*, 3:15-cv-011007 (WWE), are one-paragraph orders with no analysis. In *Panciera v. Kemper Independence Ins. Co.*, 2014 U.S. Dist. LEXIS 59076, *10, 2014 WL 1690387 (D. Conn. Apr. 29, 2014), the court based its decision, in part, on an allegation that "Defendant's field adjuster determined that the damage to [plaintiffs'] foundation was caused by a risk insured against under the collapse coverage section of their policy, but that Defendant nonetheless denied coverage," an allegation absent from this case. In *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 116 (D. Conn. 2014), the court noted that the complaint alleged that

6

Liberty had denied the claim without an inspection of the basement walls. The Court also cited allegations of denial without an investigation as the reason for denying a motion to dismiss bad faith claims in *Metsack v. Liberty Mut. Fire Ins. Co.*, 2015 U.S. Dist. LEXIS 131984, *22, 2015 WL 5797016 (D. Conn. Sept. 30, 2015). In *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014), the court noted that "the arguments made by Peerless in support of its Motion to Dismiss do not mention the exclusions cited in the denial letter"—certainly not the case here.

Plaintiffs attempt to distinguish as a "depart[ure] from. . .prior precedent" (ECF 25, at 16) the District Court's decision in *Kim v. State Farm Fire & Cas. Co.*, discussed at length in Allstate's initial memorandum. (ECF 24-1 at pp. 18-20). The court in *Kim* analyzed the plaintiff's conclusory allegations that the claim had been denied for "misleading" reasons by examining the denial letter attached to the complaint, and concluding that the stated reasons for denial were "facially plausible." *Id.* at *9-10. If this Court deems it necessary to probe the basis for Allstate's coverage denial, it should undertake a similar analysis, and reach the same result as *Kim*.

The "wear and tear"/"settling and cracking" exclusion and the "faulty, inadequate, or defective materials" exclusion, both cited in Allstate's denial letter as bases for declining coverage in this case, are virtually identical to the ones that this Court in *Kim* considered "directly applicable to Plaintiff's claim for 'pattern cracking' in their basement walls due to a chemical compound in the concrete used to construct them." *Id.* at *9. Plaintiffs nevertheless claim that Allstate's denial letter "makes no attempt to explain the factual basis underlying the majority of the cited exclusions." (ECF 25, at p. 17). In fact, the denial letter goes into considerable detail to explain the factual basis underlying Allstate's coverage decision. (ECF 24-5, at 2-5). Allstate, in its investigation of Plaintiffs' claim, retained an engineer to perform an

7

inspection of the insured property and draft a report of his findings. (Id., at pp. 6-32). Allstate cited extensively to this report in its denial letter, summarizing the report's key findings and attaching a copy of the report to the letter. (Id.).

In addition, Allstate, after citing to the relevant Policy exclusions in its denial letter, explained that these exclusions were applicable because (1) the alleged damage was likely caused by the expansion of reactive pyrrhotite in the concrete; and (2) exposure to water and air, including ground water, caused the pyrrhotite to expand and resulted in cracks in the concrete. (Id., at p. 4). In addition to the "wear and tear"/"settling and cracking" exclusion and the "faulty, inadequate, or defective materials" exclusion, the exclusions referenced in the denial letter for damage caused by (1) water exposure from various potential sources, and (2) the presence of "contaminants" are therefore directly relevant to the Plaintiffs' claim, and the underlying factual bases for these exclusions were addressed in the letter. (Id.); *see also Kim*, 2015 U.S. Dist. LEXIS 147823 at *10-11 (further noting that even when a denial letter "quote[s] other portions of the Policy without applying them to Plaintiffs' claim, this does not, in itself, mean that such provisions are inapplicable").

Finally, Plaintiffs attempt to distinguish *Kim* by stating incorrectly that the limited coverage for collapse in Plaintiffs' policy "render[s] the vast majority of the exclusions cited in the denial letter inapplicable and, therefore, misleading." (ECF 25, p. 17). In fact, the Allstate denial letter sets forth the policy's coverage for collapse, and explains why it is not applicable. (ECF 24-5, pp. 3-4). While Plaintiffs may disagree with Allstate's conclusions as to the applicability of collapse coverage, there is nothing "misleading" about Allstate's position, as stated in the letter. [5]

---

[5] Plaintiffs further attempt to distinguish *Kim* on the basis that "the policy at issue in *Kim* did not offer the "collapse" coverage found in the Allstate policy." (ECF 25, p. 17). In fact, as the decision makes clear, the policy at

8

The Amended Complaint claims that the concrete walls of the insureds' basement have experienced expansion and cracking caused by a defect in the concrete's aggregate. (ECF 21, at ¶¶ 9-12). As noted above, however, the policy's collapse coverage specifically excludes "cracking" and "expansion." (ECF 24-4, p.40). There is also no allegation in the Amended Complaint that Plaintiffs' property has suffered a "sudden" or "entire" collapse—to the contrary, Plaintiffs allege that the condition of their basement walls result from a process of "deterioration" that began when they were first poured in 1994, and has not yet run its course. (ECF 21, at ¶¶ 5, 9-16). At a minimum, a good faith dispute exists as to coverage in this case, which precludes bad faith liability. Plaintiff has cited no authority that holds otherwise.

### IV.  **Plaintiffs have not adequately pleaded a CUTPA/CUIPA claim.**

Even if this Court does not dismiss Plaintiffs' declaratory judgment and breach of contract claims, Allstate's coverage position in this case is, at a minimum, reasonable and fairly debatable, which precludes liability under CUTPA for violation of CUIPA. *See, e.g., Chi. Title Ins. Co. v. Bristol Heights Ass'n, LLC*, 2009 Conn. Super. LEXIS 3508, *23 (Conn. Super. Ct. Dec. 30, 2009) (granting summary judgment in favor of insurer on CUTPA/CUIPA claim because "liability was anything but 'reasonably clear'"); *Bauco v. Hartford Fire Ins. Co.*, 2004 Conn. Super. LEXIS 564, *43 (Conn. Super. Ct. Mar. 3, 2004) (same result).

The only provision of CUIPA that Plaintiffs invoke in their Amended Complaint and opposition brief is Conn. Gen. Stat. § 38a-816(6)(f), which proscribes "not attempting <u>in good faith</u> to effectuate prompt, fair and equitable settlements of claims <u>in which liability has become</u>

---

issue in *Kim* did offer limited collapse coverage. *Kim*, 2015 U.S. Dist. LEXIS at * 10-11. Plaintiffs also say it is "telling" that Allstate only relies on some of the exclusions and conditions stated in its denial letter in its motion to dismiss and mention the earth movement and contamination exclusions as examples of this. (ECF 25, p. 17). However, there is no requirement that Allstate's motion to dismiss cite each and every basis for denial stated in the letter. The citation of the earth movement exclusion is appropriate in a case where Plaintiffs allege that "[i]t is only a question of time until the basement walls. . .will fall in *due to the exterior pressure from surrounding soil*" (ECF 21, ¶ 15), and the reference to "contamination" is consistent with Plaintiffs' allegation of loss due to the oxidation of a chemical compound. (ECF 21, ¶¶ 11-12).

reasonably clear." (ECF 21, ¶ 58). An insurer that has a good faith basis for denying coverage cannot be in violation of § 38a-816(6)(f), which requires, as a condition, that "liability has become reasonably clear," which "means that the existence of liability has to be **substantially certain**." *Tucker v. Am. Int'l Group, Inc.*, 2015 U.S. Dist. LEXIS 9874, *90 n.48 (D. Conn. Jan. 28, 2015) (quoting 2 Insurance Claims and Disputes § 9:35 (6th ed. updated March 2014) (emphasis added). [6] Here, Allstate's coverage position is supported by exclusions that apply directly to the type of loss Plaintiffs claim. Its interpretation of the "sudden and accidental" requirement for an "entire collapse" correlates directly with the Connecticut Supreme Court's decision in *Buell*. Moreover, as discussed in Allstate's main brief, where Judge Underhill of this court just granted a motion to dismiss a lawsuit involving similar policy language, it cannot be said that Allstate's liability to Plaintiffs was "reasonably clear."[7]

## V.  Conclusion

This Court should reject Plaintiffs' attempt to create ambiguity in Allstate's policy. Plaintiffs do not and cannot allege that their home has suffered a "sudden" collapse. Their claims of "pattern cracking" are plainly excluded from coverage (ECF 21, ¶11). Even if they are not, which Allstate denies, a good-faith coverage dispute, as exists here, cannot form the basis of bad faith or CUTPA/CUIPA liability.

For the foregoing reasons, Plaintiffs have failed to state a claim upon which relief can be granted, and Counts I, II, III and IV should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

[6]  Plaintiffs try in vain to distinguish *Tucker*, arguing that it involved different facts. What Plaintiffs cannot deny is that the court in *Tucker* applied the "substantially certain" standard to dismiss a CUTPA/CUIPA claim, as a matter of law, on summary judgment. Given the state of the law in Connecticut on "collapse" coverage, and Allstate's policy language, it is not plausible to conclude that Allstate's liability here is "substantially certain."

[7]  Plaintiffs' string citation to District Court cases that have denied insurer motions directed to CUTPA-CUIPA claims (ECF 25, p. 19) does not refer to any cases that have considered the import of the requirement that liability be "substantially certain" or "reasonably clear" in order to state a claim under Conn. Gen. Stat § 38a-816(6)(f). Some of those cases, like *Kowalshyn* and *Mensher*, contain no reasoning at all.

/s/ *Raymond T. DeMeo*
Raymond T. DeMeo (ct02189)
Jessica A. R. Hamilton (ct29702)
ROBINSON & COLE, LLP
280 Trumbull Street
Hartford, CT 06103
Phone: (860) 275-8200
Fax:  (860) 275-8299
rdemeo@rc.com
jhamilton@rc.com
Attorneys for Allstate Insurance Company

## CERTIFICATION

I hereby certify that on December 7, 2016, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing though the Court's CM/ECF System.

*/s/ Raymond T. DeMeo*
Raymond T. DeMeo
