UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WILLIAM A. VALLS,
CHRISTINE C. VALLS,
    Plaintiff,

v.

ALLSTATE INSURANCE COMPANY,
    Defendant.

No. 3:16-cv-01310 (VAB)

**RULING AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

This is one of many "crumbling concrete" cases currently pending in the District of Connecticut. William and Christine Valls ("Vallses") originally filed this action in state court, seeking a declaratory judgment against Allstate Insurance Company ("Allstate"). After Defendant removed to this Court, Plaintiffs amended their Complaint to include four counts: (1) a declaratory judgment that Plaintiffs are entitled to coverage for damage to their home; (2) a breach of contract claim for Defendant's denial of coverage; (3) breach of the implied covenant of good faith and fair dealing claim in relation to Defendant's handling of the insurance claim; and (4) unfair and deceptive practices claims under the Connecticut Unfair Insurance Practices Act (CUIPA) and the Connecticut Unfair Trade Practices Act (CUTPA).

Defendant now moves to dismiss the Amended Complaint in its entirety. The motion will be **GRANTED** for the reasons stated below.

**I.    Factual and Procedural Background**

In 1998, four years after it was built, the Vallses bought their home on 67 Zeya Drive in Conventry, Connecticut. Amend. Compl., ECF No. 21 at ¶ 5. Since 2002, Allstate Insurance

1

Company has provided them with a Homeowners Policy and they, in turn, paid the premiums necessary to maintain this insurance coverage. *Id.* at ¶ 6-7.

The policy at issue provided for coverage of "sudden and accidental direct physical loss" to a covered building or part of a covered building. Deluxe Home Policy Declarations, Amend. Compl., Ex. A, ECF No. 21-1 at 6. However, the policy also limited that coverage with several exclusions or exceptions. It did not cover losses caused by the "wear and tear, aging, marring, scratching, deterioration, inherent vice or latent defect." *Id.* at 7. The policy excluded coverage for "faulty, inadequate or defective . . . materials used in repair, construction, renovation or remodeling," as well as damage caused by the "freezing, thawing, pressure, or weight of water or ice. *Id.* at 8. The policy also did not cover collapse, except as defined in the "Additional Protection" section. *Id.* at 8. This additional collapse provision provides coverage for the "entire collapse of a covered building structure" or part of a structure, provided it is "sudden and accidental physical loss" and the result of one of several enumerated causes. *Id.* at 15.

In October 2015, however, the Vallses began to notice a "series of horizontal and vertical cracks" throughout the basement walls of the property. Amend. Compl. at ¶ 9. After consulting with contractors and engineers, they discovered that the concrete had cracked due to a chemical compound in the concrete that had begun to rust, expand, and subsequently breakdown. *Id.* at ¶ 11-12. "At some point between the date on which the basement walls were poured and the month of October, 2015," Plaintiffs allege, "the basement walls suffered a substantial impairment to their structural integrity" and were now at danger of falling in. *Id.* at § 14. Plaintiffs allege that there is no way to reverse the deterioration and that, when it continues, the entire home will eventually fall into the basement. *Id.* at 13, 16.

Plaintiffs informed Allstate and Allstate dispatched an adjuster and engineer. Allstate, however, did not originally issue a decision in the matter and the Vallses filed for a declaratory judgment in Connecticut Superior Court. *See generally* Notice of Removal, ECF No. 1. Allstate removed the case to this Court. *Id.*

On August 1, 2016, Allstate denied the Vallses' claim and stated that "there is no coverage for your claimed loss under any Allstate policy." Amend. Compl., Ex. B at 2. Allstate noted that they had sent a structural engineer to the property, who identified the presence of pyrrhotite, a material that expands when it reacts with water and air. *Id*. The engineer also determined that the deterioration was minor at that time. *Id.* Allstate stated that the "foundational cracking at the Property is not 'sudden and accidental direct physical loss'" and concluded that the property did not "collapse" within the scope of protection. *Id.* at 4.

After the denial, the Vallses amended their complaint. They now allege four claims. First, they still seek a declaratory judgment as to Allstate's liability under the Homeowners Policy for collapse of the home. Second, they also now allege that Allstate breached their contract when they denied them coverage. Third, they further allege that Allstate violated the implied covenants of good faith and fair dealing, which contracting parties owe to each other. Finally, they allege that Allstate's participation in an industry-wide group violates two Connecticut statutes, Connecticut Unfair Insurance Practices Act (CUTPA), Conn. Gen. State. § 42-110a, et seq., and the Connecticut Unfair Trade Practices Act (CUIPA). Conn. Gen. Stat. § 38a-816(6)(F).

Allstate now moves to dismiss the Complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) requires the dismissal of any claim that fails "to state a claim upon which relief can be granted." In reviewing a complaint under Rule 12(b)(6), the court applies "a 'plausibility standard'" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Second, to survive a motion to dismiss, the complaint must state a plausible claim for relief. *Id*. at 679. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. Instead, a plaintiff must allege facts that nudge[] their claims across the line from conceivable to plausible . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether the complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

When evaluating a 12(b)(6) motion, the court must accept all factual allegations in the complaint as true and draw all possible inferences from those allegations in favor of the plaintiff. *See York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir.), cert. denied, 537 U.S. 1089 (2002). The proper consideration is not whether the plaintiff ultimately will prevail, but whether the plaintiff has stated a claim upon which relief may be granted such that he should be entitled to offer evidence to support his claim. *See id.* (citation omitted). Courts considering motions to dismiss under Rule 12(b)(6) generally "must limit [their] analysis to the four corners of the complaint," though they may also consider documents that are "incorporated in the complaint by reference." *Kermanshah v. Kermanshah*, 580 F.Supp.2d 247, 258 (S.D.N.Y. 2008).

**III. Discussion**

Allstate's putative liability hinges on whether or not they breached the contract: that is, whether the loss from the Homeowners Policy issued to the Vallses covers the deteriorating concrete in their basement. Because we determine that Allstate is not in breach, we dismiss that claim along with the claims for breach of implied covenants and the claims under CUTPA and CUIPA.

**A. Breach of Contract**

We begin with the breach of contract claim – Count II in the Amended Complaint – as its resolution will inform the resolution of the other claims alleged. As pleaded, the Vallses allege that Allstate breached their contractual obligation by denying coverage, despite policy language specifying that "the entire collapse of a building structure" would be covered under certain conditions. Amend. Compl. at ¶¶ 31, 33.

Under Connecticut law, the terms of an insurance policy are "construed according to the general rules of contract construction." *Liberty Mutual Insurance Co. v. Lone Star Industries, Inc.,* 290 Conn. 767, 795 (2009) (internal quotations and citations omitted). While contracts are strictly construed in favor of the insured, "the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." *Id.* at 796. "The court must conclude that the language should be construed in favor of the insured unless it has 'a high degree of certainty' that the policy language clearly and unambiguously excludes the claim." *Id.* (*quoting Kelly v. Figueiredo*, 223 Conn. 31, 37 (1992)).

Allstate asserts that the "progressive deterioration, caused by the cracking of basement walls due to defective materials is not covered under the plain and unambiguous terms of the Allstate Policy." Def. Mem. in Support ("Def. Mem."), ECF No. 24-1 at 7. Allstate asserts three

justifications for denying the claim. First, as a general matter, Allstate argues that the policy only covers "sudden and accidental direct physical loss." *Id.* A "progressive deterioration" therefore would not qualify as sudden. Second, Allstate argues the claim falls within policy exclusions for "the settling, cracking, shrinking, bulging or expansion of pavements, patios, foundations, walls, floors, roofs, or ceilings." *Id.* at 7-8. Third, the company argues that the loss would be excluded under provisions related to defective construction, construction materials, rust, or corrosion. *Id.* at 8-9.

The Vallses do not address Allstate's arguments directly,[1] but instead argue their loss is covered under a provision of the policy labelled "Collapse." Pl. Opp. Mem., ECF No. 25 at 7. They argue that the terms of the collapse provision are "ambiguous and, therefore, must be construed against Allstate and in favor of coverage." *Id.* at 3.

### 1. "Sudden and Accidental Direct Physical Loss"

As a threshold matter, the policy states that Allstate covers "sudden and accidental direct physical loss" to a covered property. Deluxe Home Policy Declarations, Amend. Compl., Ex. A, ECF No. 21-1 at 6. Allstate cites *Buell Industries, Inc.* v. *Greater New York Mutual Insurance Co.*, 259 Conn. 527 (2002) to argue that the meaning of the term is well-settled in Connecticut law.

*Buell* addressed a clause in an insurance policy covering environmental claims, which included an "'sudden and accidental' exception to the pollution exclusion contained in the defendants' insurance policies." *Id.* at 529. The Connecticut Supreme Court noted that "Connecticut trial courts uniformly have interpreted the term 'sudden' to require a temporally

---

[1] The Vallses instead address the "sudden and accidental" term within the context of the collapse provision rather than by itself.

abrupt release of pollutants." *Id.* at 536-37. The court rejected the plaintiff's definition of sudden as "only unexpected," instead defining the term as "temporally dependent," requiring "the release [of pollution] occur in a rapid or abrupt manner." *Id.* at 541, 543. Therefore, the Court concluded that "[t]he 'sudden and accidental' exception was added, it seems to us, to allow coverage for such discharges, not, as the plaintiff would have it, for unexpected, continuous or repeated events, but if they happen to occur abruptly." *Id.* at 544.

This Court has repeatedly applied *Buell's* definition to identical policy language and similar factual circumstances at issue in this case. *See, e.g. Adams v. Allstate Insurance Co.*, No. 3:16-CV-1360 (JBA), 2017 WL 3763837 (D. Conn. 2017) (applying *Buell* and dismissing all claims, including breach of contract, against Allstate in concrete case); *Clough v. Allstate Insurance Co.*, No. 3:17-CV-140 (JBA), 2017 WL 3763841 (D. Conn. 2017) (same); *Miller v. Allstate Insurance Co.*, No. 3:16-CV-2059 (JBA), 2017 WL 3763425 (D. Conn. 2017) (same).

Those decisions are persuasive. Like in those cases, plaintiffs here have only alleged their walls "suffered a substantial impairment to their structural integrity" and "it is only a question of time until the basement walls of the plaintiffs' home will fall in due to the exterior pressure from the surrounding soil." Amend. Compl. at ¶¶ 14, 15. The Vallses therefore allege a "progressive deterioration" and "[w]ithout any plausible allegation of suddenness" they fail to plausibly allege coverage unless they can argue another provision applies. *Miller,* 2017 WL 3763425 at *3.[2] They seek to do so within the "Collapse" provisions.

2. **The "Collapse Provision"**

---

[2] As noted above Defendant has offered two other provisions of the policy that might exclude coverage for the claimed loss. Plaintiffs do not address these provisions and the Court need not address them here, given Plaintiff's failure to allege that any provision *does* bring the loss within coverage of the policy.

7

The Vallses' policy provides for coverage of "(a) the entire collapse of a covered **building structure**; (b) the entire collapse of part of a covered **building structure**; and (c) direct physical loss to covered property caused by (a) or (b) above." Deluxe Home Policy Declarations, Amend. Compl., Ex. A, ECF No. 21-1 at 15 (emphasis in original). However, for the collapse to be covered it must be "a sudden and accidental direct physical loss caused by one or more of the following:

a) A loss we cover under [Section I, Coverage C]

b) Hidden decay of the building structure

. . .

f) Defective methods or materials used in construction, repair, remodeling or renovation."

*Id.* The policy further excludes coverage for the "settling, cracking, shrinking, bulging or expansion." *Id.*

The Vallses allege that "the basement walls of the plaintiffs' homes are in a state of collapse, which collapse was the result of a covered cause." Amend. Compl. at ¶ 20. They argue that, first, Allstate has not defined the term "collapse" and, therefore, the loss is within the meaning of the term under Connecticut law. Pl. Opp. Mem. at 7 (*citing Beach v. Middlesex Mutual Assurance Co.*, 205 Conn. 246, 252 (1987)). They also argue that the modifying language "sudden and accidental physical loss" conflicts with the Connecticut Supreme Court's definition of "collapse" and the fact that the policy explicitly mentions slow moving causes such as hidden decay.

This argument is unpersuasive. It is true that "collapse," by itself may be ambiguous, and that the Connecticut Supreme Court's definition of "substantial impairment" could therefore apply. *Beach*, 205 Conn. at 253. This Court has, on numerous occasions, allowed concrete claims

to proceed to summary judgment when the term "collapse" has been without qualification in the policy. *See, e.g., Metsack v. Liberty Mut. Fire Ins. Co.*, 2015 WL 5797016 (D. Conn. Sept. 30, 2015); *Gabriel v. Liberty Mut. Fire Ins. Co.,* 2015 WL 5684063 (D. Conn. Sept. 28, 2015); *Belz v. Peerless Ins. Co.,* 46 F. Supp. 3d 157 (D. Conn. 2014); *Karas v. Liberty Ins. Corp.,* 33 F. Supp. 3d 110 (D. Conn. 2014); *accord. Agosti v. Merrimack Mut. Fire Ins. Co.*, No. 3:16-CV-01686 (SRU), 2017 WL 3710786, at *4 (D. Conn. Aug. 28, 2017) ("For the reasons stated by the Connecticut Supreme Court in Beach v. Middlesex Mutual Assurance Co., and subsequently followed by many judges of this court, I conclude that the term 'collapse,' standing alone, 'is sufficiently ambiguous to include coverage for any substantial impairment of the structural integrity of a building.'") (*quoting Beach*, 205 Conn. at 252).

The Vallses' policy, however, explicitly requires that any collapse be "a sudden and accidental direct physical loss" and a "complete collapse." As addressed above, they have not alleged a sudden collapse. *See, e.g. Adams,* 2017 WL 3763837 at *4 (finding that plaintiffs had failed to allege a sudden collapse); *Manseau v. Allstate Insurance Co.*, No. 3:16-CV-1231 (MPS), 2017 WL 3821791, at *5 (D. Conn. Aug. 31, 2017) ("Regardless of whether the loss is characterized as a collapse or a chemical reaction, Plaintiffs fail to allege that any loss occurred suddenly, that is, temporally abruptly, as required for coverage to apply."). Nor have they alleged a "complete collapse." *See Agosti,* 2017 WL 3710786, at *7 ("Under the present policy, I agree that 'the term "entire collapse" is susceptible of only one reasonable interpretation,' namely, an 'actual collapse.'")

Plaintiffs argue that reading a temporal requirement into the "collapse" provision would contradict the Connecticut Supreme Court's definition in *Beach* and the requirement that

9

collapse comes from hidden decay, insect damage or other slow moving processes.[3] Pl. Opp. Mem. at 8. The Court disagrees.

First, it is not inconsistent for the cause of the collapse to be slow moving, while the collapse itself be sudden or complete. *Adams*, 2017 WL 3763837, at *4 ("Under the terms of the Policy, a process of hidden decay does not trigger coverage until a sudden collapse occurs.") Second, the temporal requirement helps clarify "collapse," rendering the combined term unambiguous. *See Agosti,* 2017 WL 3710786, at *4 (noting that while the term collapse might be ambiguous, the term "entire collapse" was not); *see also Firestine v. Poverman,* 388 F. Supp. 948, 951 (D. Conn. 1975) (noting rule of interpretation requiring an insurance policy to "be construed as a whole, and all of its relevant provisions are to be considered in connection with one another."); *Associated Community Bancorp, Inc. v. The Travelers Companies, Inc.,* No. 3:09-cv-1357 (JCH), 2010 WL 1416842, at *8 (D. Conn. Apr. 8, 2010) (rejecting plaintiff's argument that a phrase was ambiguous because it had been modified by additional language).

While such a collapse may happen in the future, Plaintiffs have not alleged that such a sudden collapse has occurred yet. Therefore, the "collapse" provision does not yet apply. Count II of the Amended Complaint must be dismissed.

### B. Counts III: Breach of Implied Covenants

The Vallses also allege that Allstate has violated the implied covenant of good faith and fair dealing. While each contract imposes a duty of good faith and fair dealing on the parties, Connecticut law requires a breach of contract in order to plead bad faith. *See, e.g. Capstone*

---

[3] The same logic applies to the policy's exclusion under the collapse provision for "settling, cracking, shrinking, bulging or expansion." If these conditions cause a collapse they may be within the meaning of the policy; until then coverage is precluded. *See Agosti,* 2017 WL 3710786 at *4 (noting that the same provision related to cracking, shrinking, bulging or expansion would not necessarily bar coverage if a collapse had occurred).

*Bldg. Corp. v. American Motorists Insurance Co.*, 308 Conn. 760, 798 (2013)(concluding that "bad faith is not actionable apart from a wrongful denial of a benefit under [an insurance] policy."). Because Plaintiffs have not plead a plausible claim for breach of contract, their claim for breach of the implied covenant of good faith and fair dealing also fails. *See, e.g.*, *Manseau*, 2017 WL 3821791, at *5 (dismissing breach of implied covenant claim in concrete case after court dismissed breach of contract claim); *Agosti,* 2017 WL 3710786 at *8 (same). Count III of the Amended Complaint therefore must be dismissed.

### C. Count IV: Claims Under CUTPA/CUIPA

Plaintiff further alleges violations of the CUTPA and CUIPA. These claims also fail.

"To succeed on such a CUTPA claim, a plaintiff must show that the defendant engaged in an act prohibited by CUIPA's substantive provisions, and that the act proximately caused the harm alleged." *Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 165 (D. Conn. 2014). "The requirement that the insurer settle when the insured's liability is 'reasonably clear' means that the existence of liability has to be substantially certain." *Tucker v. AIG*, No. 3:09-cv-1499 (CSH) 2015 WL 403195, at *27 & n.48 (D. Conn. Jan. 28, 2015).

Plaintiffs allege that the defendant participated with other insurance companies in the Insurance Services Office, Inc. (ISO), "a cooperative organization formed and controlled by its participants for the purpose, among others, of collecting data on the type of claims made, the policy provisions cited for the basis of each claim, the geographic areas in which the claimed damage has occurred, and the actions taken by insurers in response to such claims." Amend Compl. at ¶ 47. Plaintiffs allege that through the ISO, the defendant knew how others insurers responded to claims and "gave the insured a knowingly false and misleading reason for the denial of coverage." *Id.* at ¶ 53.

Given that this Court has now concluded there is no liability for Allstate, it was not "reasonably clear" that liability would have existed. Count IV of the Amended Complaint therefore is dismissed.

### D. Count I: Declaratory Judgment

The Vallses have also sought a declaratory judgment against Allstate. Amend Compl. ¶¶ 8-28. The Amended Complaint appears to incorporate language from the original state court filing, as it alleges "the plaintiffs fully expect that the defendant will deny coverage for their claim." *Id.* at ¶ 25. However, the Amended Complaint then acknowledges that Allstate denied coverage on August 1, 2016. *Id.* at ¶ 30.

28 U.S.C. § 2201 provides that federal courts with jurisdiction over a case "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

The Declaratory Judgment Act, of course, is still limited by the other constraints of Article III jurisdiction: there must be a case or controversy that is justiciable. U.S. Const., Art. III § 2; *see*, *also, Dow Jones & Co. v. Harrods, Ltd*., 237 F. Supp. 2d 394, 406 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003) ("As a threshold issue, DJA actions are justiciable only in cases in which an "actual controversy" exists. The relevant inquiry for this prerequisite is coextensive with the analysis applicable to the "case or controversy" standard embodied in Article III of the United States Constitution.").

As part of this limitation, the Court must therefore determine whether the declaratory judgment action is ripe for review. *See, e.g. Reno v. Catholic Social. Services, Inc*., 509 U.S. 43, 58 & n. 18 (1993) (noting that, because ripeness is "drawn both from Article III limitations on

judicial power and from prudential reasons for refusing to exercise jurisdiction" the court could raise it *sua sponte*). "The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment is necessarily one of degree" and the courts have generally avoided drawing a bright line rule. *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

The Second Circuit therefore requires that "[t]he standard for ripeness in a declaratory judgment action is that "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co*., 411 F.3d 384, 388 (2d Cir. 2005) (*quoting Maryland Casualty Company*, 312 U.S. at 273). District courts must ask: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade*, 411 F.3d at 389.

The mere fact that liability is contingent on an event—here, the "entire collapse" of the home—does not mean that the declaratory judgment action is unripe. As the Second Circuit has noted, "litigation over insurance coverage has become the paradigm for asserting jurisdiction despite 'future contingencies that will determine whether a controversy ever actually becomes real.'" *Associated Indemnification Corp. v. Fairchild Industries, Inc*., 961 F.2d 32, 35 (2d Cir. 1992). "That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. . . . Rather, courts should focus on "the practical likelihood that the contingencies will occur . . . ." *Id. See also Federal Insurance Co. v. Safenet, Inc.*, 758 F.Supp.2d 251, 262 (S.D.N.Y. 2010) (collecting cases).

The party seeking the declaratory judgment, however, bears the burden of demonstrating that the case is ripe for adjudication. *E.R. Squibb & Sons v. Lloyd's & Co.,* 241 F.3d 154, 177 (2d Cir. 2001) ("A party seeking a declaratory judgment bears the burden of proving that the district court has jurisdiction."); *Federal Insurance Co*., 758 F.Supp.2d at 261. As addressed above, the Amended Complaint is internally consistent, both seeking a declaratory judgment in anticipation of the denial of the claim and noting that claim's denial. *Compare* Amend Compl. at ¶ 25 *with id.* at ¶ 30. To the extent that Plaintiffs seek a limited declaration as to their rights in respect to their original insurance claim, that action is now mooted by the dismissal of their breach of contract claim.[4]

To the extent that the Plaintiffs seek a more global statement of Allstate's liabilities with respect to an eventual "entire collapse," they have yet to meet their burden as to whether such a collapse is "of sufficient immediacy and reality" to warrant a declaratory judgment. Therefore, the declaratory judgment claim will be dismissed without prejudice.

**Conclusion**

Therefore, for the reasons state above the Defendant's motion to dismiss is **GRANTED**. Count One is **DISMISSED** without prejudice. Counts II, III, and IV are **DISMSSED**. The Clerk of Court is directed to close the case.

SO ORDERED at Bridgeport, Connecticut, this 27th day of September 2017.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge

---

[4] This seems to be in keeping with the Plaintiff's arguments, which treat breach of contract and the declaratory judgment action as the same. Pl. Opp. Mem. at 5 & n.1.